UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-22126-CV-WILLIAMS/TORRES

CARMEN ROMERO,

      Plaintiff,

v.

REGIONS FINANCIAL CORPORATION/
REGIONS BANK,

      Defendant.
_____/

## **ORDER ON PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**

Plaintiff CARMEN ROMERO filed the present Motion on May 28, 2019, seeking sanctions for spoliation of evidence against Defendant REGIONS FINANCIAL CORPORATION. [D.E. 110]. In the Motion, Romero asks that we find Defendant, in bad faith, destroyed video surveillance evidence that may have shown certain events at Defendant's Miami Lakes banking branch on the afternoon of May 28, 2016. Plaintiff requests: (1) an adverse jury instruction that the deleted video would have supported Plaintiff's claim about what occurred on the day in question; (2) exclusion of reliance on the video in resolving Defendant's motion for summary judgment; and (3) fees and costs associated with investigating the spoliation issue and filing the Motion for Sanctions.

After reviewing the Motion, Defendant's Response in Opposition [D.E. 116], and the relevant governing authorities on the issue, we hereby find that it should be **DENIED**.

## I. FACTUAL BACKGROUND

It would be an understatement to say that this litigation has turned acrimonious. The parties' briefing materials on most issues devolve into overstated accusations of impropriety, while a majority of the pleadings contain unnecessarily testy exchanges between counsel. We will do our best to crawl through the weeds to get to the bottom of what actually occurred, although at times the briefing on the subject makes this a difficult task. Nevertheless, the following is our summary of the events leading to Plaintiff's filing of the Motion for Sanctions.

### A. *The Actions Giving Rise to Plaintiff's Firing*

On the date of her termination – Saturday, May 28, 2016 – Plaintiff was working at a Regions banking branch location in Miami Lakes, Florida.[1] Sometime around 10:00 in the morning, a father and son entered the branch. The father had been a customer at Regions for several years, and Romero had interacted with him previously while handling various banking transactions on his behalf. The son, who recently emigrated to the United States from Cuba, allegedly wanted to open a new account with Defendant.

---

[1] Plaintiff testified that she normally worked in the Hialeah branch during the week, but once or twice a month would pick up a Saturday shift at the Miami Lakes branch, which was located close to her home.

Regions requires any potential new customer to present several forms of identification before any account can be opened. Such requirements stem from certain company policies, most of which have been put in place to comply with various federal and local banking laws passed in the wake of the September 11th terrorist attacks. The forms of identification necessary to open a new account vary based on the new customer's citizenship or residency status. For purposes of our case here, the child – a resident alien – needed to provide the following before any account could be opened on his behalf: (1) a Florida driver's license, or some other state-issued identification; (2) a passport; (3) a permanent resident card; and (4) a social security card.

Defendant contends that on May 28, 2016, the child provided only two of the four types of identification required: a Cuban passport and a social security card. Defendant's policies do not allow Cuban passports to serve as an acceptable form of identification, and any attempt to enter such information into Regions' computing systems would have immediately triggered a warning to the employee that would prevent someone from proceeding with an account opening absent a manager's override of the system.[2]

According to her deposition testimony, Plaintiff knew about the policies put in place by Defendant and understood the importance of collecting valid forms of

---

[2] At several stages, Region's banking system will "lock" the screen and warn an employee if it detects an issue with certain information entered for the opening of a new account. Plaintiff testified that the system provided two such warnings as she entered the information provided by the customer on the date giving rise to the underlying Complaint – one indicating an invalid social security number, and the other concerning a possible invalid driver's license format. [Depo. of C. Romero, D.E. 130-1, pp. 118-119].

identification prior to the opening of any new account. Regions claims, however, that Plaintiff avoided the I-Connect system's safeguards by misrepresenting the form of identification the child provided on the date in question. Specifically, Defendant asserts that Romero entered certain information contained within the passport – such as the issuing date, number, and expiration date – but identified the document as a Florida non-driver's license identification card, which is an acceptable form of identification. Thus, Regions contends that Romero intentionally circumvented the system's safeguards, thereby allowing the account to be opened on the child's behalf that day.

The branch closed at noon the day Defendant alleges Romero fraudulently entered the unauthorized identification information into the system. Shortly before the bank's closing, Leysi Pumar – the branch supervisor on duty – claims she discovered what Romero had done when she reviewed a photocopy of the Cuban passport placed in the new customer's file. Pumar testified that she confronted Romero about her actions, and after discussing the issue, felt that Plaintiff had intentionally violated company policy. Pumar referred the matter to Regions' human resources department shortly thereafter.

Aimee Gonzalez, an employee with Regions' human resources department tasked with investigating the incident, discussed the issue with Pumar and consulted company policy on acceptable forms of identification. She also met with and spoke to Romero about the incident. Gonzalez claims that Romero admitted to violating the policy and ultimately determined Plaintiff had opened the account using

4

unauthorized forms of identification.[3] Gonzalez recommended that Romero be fired, and Regions terminated Plaintiff's employment on July 8, 2016. Romero was 63 years old at that time.

Romero tells a far different story. When deposed in January of this year, Plaintiff denied that she ever opened the account at issue. Instead, she blamed Pumar for accepting the documents.

> **PLAINTIFF:** I [entered] the social security number and that's when the system stopped me.
>
> **COUNSEL:** And that's when you call over [Pumar]? Is that correct?
>
> **PLAINTIFF:** Correct.
>
> **COUNSEL:** And it's your testimony that [Pumar entered] the remaining information [into the system]?
>
> **PLAINTIFF:** Correct.

[Depo. of C. Romero, D.E. 130-1, pp. 118-19]. Defendant claims that Romero never provided this version of events at any point prior to her deposition, and immediately initiated measures that could ascertain whether Pumar had ultimately been the wrongful actor. This leads us to the video surveillance at the hear of Plaintiff's Motion for Sanction.

---

[3] The Complaint Resolution Form summarizing the investigation and recommending Plaintiff's termination also includes a description of Gonzalez's conversation with Romero. In that form, Gonzalez indicates that Romero admitted that she accepted the non-valid forms of identification and was "fully-aware" that what she had done was wrong. [D.E. 54-5, p. 10-11].

5

### B. *Plaintiff's Motion for Spoliation of Evidence*

In order to rebut Plaintiff's claim that Pumar was to blame for her firing, Defendant asked Regions' technology department to search for surveillance video at the time the unauthorized customer attempted to open the account. On February 14, 2019, Defendant located the surveillance tapes for the day in question, for a period spanning 9:00 A.M. to 10:45 A.M. Randall Shields, a corporate security field investigator, explained how he reviewed the tapes at issue and testified that he chose only to preserve this portion of the tape. [Depo. of R. Shields, D.E. 116-6, p. 6-7].

Plaintiff's request for spoliation focuses on the "missing" portion of surveillance for the remainder of the work day. Plaintiff claims that after being provided with the surveillance tapes, her counsel immediately requested that he also be given tapes pertaining to the end-of-day confrontation between Pumar and Romero, when Pumar alleged confronted Romero about her acceptance of the Cuban passport. Defendant concedes that this portion of the tape was not preserved, and can no longer be recovered.

Plaintiff now asks that Regions be sanctioned for its failure to preserve the remainder of the day's video. Romero claims Regions needed to provide the entirety of the day's recordings because the "end of day" debrief between Pumar and Romero is key to proving her version of events and can be used to defeat Defendant's Motion for Summary Judgment. We have thoroughly reviewed the record, including

6

arguments made during the discovery hearing that took place on April 19, 2019. For the reasons stated below, we will deny the Motion.[4]

## II. APPLICABLE LEGAL PRINCIPLES

### A. *Spoliation*

Spoliation is defined as the "destruction of evidence" or the "significant and meaningful alteration of a document or instrument." *Green Leaf Nursery v. E.I. Dupont de Nemours and Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (quotation omitted). A district court possesses broad discretion in deciding whether to impose sanctions for the spoliation of evidence. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). The power to sanction for spoliation "derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Id.*

To establish spoliation, the moving party must show (1) that the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense. *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1323 (S.D. Fla. 2010) (citations omitted). Sanctions for spoliation may include dismissal of the case, exclusion of certain evidence, or a jury instruction on

---

[4]  We may enter an order, as opposed to a report and recommendation, because Plaintiff does not request dispositive relief for the alleged sanctionable conduct. *See* Fed. R. Civ. P. 72(a); *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519-20 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b).").

7

the spoliation of evidence that raises a presumption against the spoliator. *Flury*, 427 F.3d at 945.

Prior to the amendment of Rule 37, which we discuss below, the Eleventh Circuit made clear that the severe sanctions of an adverse inference or default judgment are only proper when the absence of the evidence is due to bad faith on the part of the alleged spoliator. *See ML Healthcare Servs., LLC v. Publix Supermarkets, Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018) (quoting *S.E.C. v. Goble*, 682 F.3d 934, 947 (11th Cir. 2012) (adverse inference instruction only proper "when the absence of [the] evidence is predicated on bad faith.")); *Flury*, 427 F.3d at 944 ("[D]ismissal represents the most severe sanction available to a federal court, and therefore should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice.").

### B.  *Rule 37(e)*

In December of 2015, Rule 37 of the Federal Rules of Civil Procedure was amended to address the spoliation of electronically stored information ("ESI") like the video at issue here. *See* Fed. R. Civ. P. 37(e). That Rule now provides that if ESI (that should have been preserved in the anticipation or conduct of litigation) is lost because a party failed to take reasonable steps to preserve it and it cannot be restored or replaced through additional discovery, the court:

> (1) upon a finding of prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

8

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Following amendment of the Rule, many courts have held that Rule 37(e) – and not the Court's inherent powers to control its docket – provide the exclusive mechanism by which we must analyze spoliation allegations involving ESI. *See Living Color Enterprises, Inc. v. New Era Aquaculture, Ltd.*, 2016 WL 1105297, at *4 (S.D. Fla. Mar. 22, 2016); *Wooden v. Barringer*, 2017 WL 5140518, at *3-4 (N.D. Fla. Nov. 6, 2017); *Alabama Aircraft Industries, Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017). This argument finds support in the advisory committee notes to Rule 37, which state:

> Rule 37(e) replaces the 2006 rule. It authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. *It therefore forecloses reliance on inherent authority* or state law to determine when certain measures should be used.

Fed. R. Civ. P. 37 advisory committee's notes (2015).

Thus, Rule 37 provides the exclusive avenue to sanction a party based on spoliation allegations related to ESI, which would include the surveillance video at issue here. *See Sosa v. Carnival Corp.*, 2018 WL 6335178, at *11 (S.D. Fla. Dec. 4, 2018) (finding closed circuit television footage is ESI governed by Rule 37(e)). As such, we will analyze Plaintiff's Motion using the guidance provided by that Rule.

9

## III.   ANALYSIS

### A.   *Sanctions Are Inappropriate Under Rule 37(e)(1)*

Under Rule 37(e)(1), a court may enter sanctions only if: (1) ESI should have been preserved in the anticipation or conduct of litigation; (2) a party failed to take reasonable steps to preserve the ESI; (3) the ESI was lost as a result; (4) the ESI could not be restored or replaced by additional discovery; and (5) the non-spoliating party suffers prejudice from that loss. Fed. R. Civ. P. 37(e)(1). For our purposes, the key question is whether Plaintiff suffered prejudice as a result of the loss of the surveillance tape pertaining to the remainder of the workday on May 28, 2016. *See* Fed. R. Civ. P. 37(e)(1), advisory committee's notes (2015) (stating that when the content of the lost ESI is "fairly evident," or the information appears to be unimportant, "[r]equiring the party seeking curative measures to [show] prejudice may be reasonable."). We find that the Motion should be denied because Plaintiff cannot establish she suffered prejudice as a result of that loss.[5]

"An evaluation of prejudice from the loss of [ESI] necessarily includes an evaluation of the information's importance to the litigation." *Id.*, advisory committee's notes (2015). Here, we find that the video at issue is unimportant because it involves information entirely immaterial to Plaintiff's claims that Regions discriminated against her on the basis of her age. To prevail on that claim, Plaintiff must establish a prima facie case by showing, among other things, that (1) a similarly-situated

---

[5]   As discussed later, we disagree with Plaintiff that Defendant needed to preserve surveillance footage for the entire day.

employee had engaged in the same conduct but received more favorable treatment, or (2) that Regions replaced her with a younger employee. *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989). Plaintiff must also rebut any justification for the termination offered by Defendant by showing that her firing was nothing more than a "mere pretext" for discrimination. *Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 851 (11th Cir. 1997).

Not a single one of those factors are implicated by Romero's claimed need for the missing portion of the video surveillance tapes. Whether or not Pumar confronted Romero about the documents used to open the accounts is wholly irrelevant to whether she can establish her prima facie case, or whether Regions had cause to terminate her employment. Romero flatly denies that she opened the account that led to her termination; the missing portion of the video would have no bearing on the truth of that assertion. She also claims that several other employees made derogatory comments about her age in the months before Regions fired her. The missing surveillance tapes would likewise do nothing to help her show that this may have occurred. Stated as simply as possible, the video does not prove or disprove any genuine issue material to her underlying claims of discrimination, and so we cannot find she suffered prejudice for Regions' failure to preserve this particular ESI.

Indeed, Plaintiff's own counsel had difficulty providing this Court with an explanation as to *why* the tapes were so important when the issue came up during a recent hearing with the undersigned. When asked, he offered the following:

> **COUNSEL:** Ms. Pumar claims – the defendant alleges that Ms. Pumar came to my client's desk as she was leaving for the day. This

> incident regarding opening the account happened between 9 and 10-ish, I think. But Ms. Pumar had nothing to do with this. She had no involvement. She only found out at the end of the day, end of the shift, around 12:30. When she came as my client was leaving, as she found out about this and to her shock she said, how did you open this account? How dare you open the account, and so forth. So the videotape would actually reflect whether or not there was this meeting, which never happened by the way.

[April 19, 2019 Hearing Transcript, D.E. 88, pp. 24-25]. When asked for a second time about the relevance of the missing ESI, Plaintiff's counsel once again failed to offer anything that could reasonably establish the missing video's importance.

> THE COURT: Any why is it relevant again? Remind me what happened in the afternoon.
>
> **COUNSEL:** So from our claim, [Pumar's] testimony is that she found out about this improper opening of the account at the end of the shift, end of the day, around 12:30 when Ms. Romero was leaving to go home.
>
> THE COURT: Right.
>
> **COUNSEL:** So she said she went up to her desk and started talking about it. [Pumar] saw the document and she said…how could you open this? That is what she claims in her deposition testimony, that all this happened at the end of the day, your Honor.

*Id.*, p. 65. Crucially, and for purposes of our spoliation analysis, Plaintiff never "connects the dots." She claims that the video is missing, and she denies the conversation with Pumar ever took place; but she never articulates *why*, if such a meeting never took place, the absence of video confirming this fact is *important*. Absent this showing, sanctions under Rule 37(e) are inappropriate, and so the Motion should be denied. *See* Fed. R. Civ. P. 37(e)(1), advisory committee's notes (2015).

The Eleventh Circuit's recent decision in *ML Healthcare Services* helps to illustrate our point. In that case, the Court confronted a spoliation claim made by a plaintiff who alleged that the defendant failed to preserve video surveillance showing the plaintiff's slip-and-fall incident that occurred at a Publix supermarket. *See* 881 F.3d at 1307. Counsel for the plaintiff sent two letters to defendant shortly after the accident, asking that "all video media from every camera at the subject Publix store" be preserved for a two month-period beginning on the date the alleged incident took place. *Id*. Despite this request, Defendant only preserved one hour of video related to the plaintiff's fall – the thirty minutes prior to and the thirty minutes following the accident. *Id*.

Plaintiff sought spoliations sanctions as a result of the destruction of the video, asking that the district court provide an adverse inference instruction to the jury or preclude defendant's witnesses from testifying about the subject flooring at the time the incident took. *Id*. The district court denied the Motion, finding that the defendant had no duty to preserve any more video than what had been provided to the plaintiff and determining that the destruction of the video "was not undertaken with the necessary state of mind to warrant sanctions." *Id*.

The Eleventh Circuit affirmed the district court's decision. *Id*. In doing so, it found that the duty to preserve did not extend to the two-month period of tape plaintiff requested after the incident. *Id*. at 1308. More importantly for our purposes, the Court concluded that the record did not support plaintiff's request for an adverse inference:

> [T]his not the sort of case where the unpreserved evidence clearly would have resolved a crucial issue in the case. *See Flury*, 427 F.3d at 946 (suggesting that, in making the bad faith determination, the court should "weigh the degree of the spoliator's culpability against the prejudice to the opposing party"). Plaintiff hoped the video would contradict the testimony of Defendant's employees that inspections were conducted at 5:00 and 6:00 a.m. on the morning of Plaintiff's accident and that the aisle had been auto-scrubbed the night before the accident, with the employee following the machine to pick up excess liquid. Further, Plaintiff hopes the video would show that an employee's stocking cart traversed the area of the fall, from which the jury might infer that the cart was leaking some sort of liquid, which dripped on the spot of the fall and remained on the floor until Plaintiff came into contact with it…Plaintiff provides no reason to believe that the video would have actually shown these [ ] things[, and f]ailure to preserve such speculative evidence does not raise the specter of bad faith in the way that a failure to preserve evidence of a specific, crucial event in a case might.

*Id.* at 1308-09.

The Court also agreed with the district court that the record did not support plaintiff's request for exclusion of the evidence.

> Under either *Flury* or Rule 37(e), [exclusion] depends on a finding that destruction of the evidence resulted in prejudice to the opposing party. In both its initial ruling and its oral ruling upon reconsideration, the district court held that Plaintiff had not been prejudiced by Defendant's failure to provide additional video evidence. Specifically, the court found that any additional benefit from the undisclosed video was 'purely speculation and conjecture,' and the resolution of the videos was not clear enough to see any liquids on the floor, even if the videos were available. The court thus concluded that 'having additional videotape to look at would accomplish nothing but consume more of everybody's time in this case.'

*Id.* at 1309. Thus, the Court found no basis in plaintiff's argument that the district court abused its discretion in denying the spoliation sanctions. *Id.* at 1309.

The same is true here. Plaintiff *hopes* that the unpreserved video would contradict Pumar's claim that she confronted Romero at the end of the workday,

14

which might impact Pumar's credibility but would in no way create a triable fact as to whether Regions' employees engaged in discriminatory acts. Regions' failure to preserve the video recording of such an ancillary point of contention "does not raise the specter of bad faith" in the same way that a failure to preserve the entire video might, and Romero's request for sanctions relies on nothing more than speculation and conjecture as to what the end-of-day video might show. *Id*.

Because we are unconvinced that the missing video footage is important, Plaintiff cannot establish she will suffer prejudice as a result of Regions' failure to preserve. *Id*. This alone allows us to deny the Motion. *See In Matter of Complaint of Boston Boat III, LLC*, 310 F.R.D. 510, 514 (S.D. Fla. 2015) ("In meeting the requirement to demonstrate that the spoliated evidence was *crucial* to the movant's ability to prove its prima facie case or defense, it is not enough for the movant to show only that the spoliated evidence would have been *relevant* to a claim or defense.") (emphasis original); Managed Care Solutions, 736 F. Supp. 2d at 1327-28 (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence that had already been obtained).

There is one additional fact we cannot ignore in light of Romero's claim about the importance of the lost video: she never once sought information related to the alleged Romero/Pumar confrontation until Defendant provided it in an effort to rebut her deposition testimony concerning Pumar's actions on the day in question.[6] This

---

[6] Plaintiff has attempted to argue that the video surveillance footage should have been disclosed in light of her seventh request for production, which asked for any documents related to Regions' contention that Plaintiff had been terminated for

undermines Plaintiff's argument about the importance of the video evidence. If the end-of-day confrontation was, indeed, so critical to proving that Regions acted in a discriminatory fashion, it would be expected that her attorneys would move heaven and earth to uncover any footage that might support such a claim. Yet the issue remained dormant until Defendant presented Plaintiff with the surveillance footage that seemingly contradicted Plaintiff's version of events.

Additionally, in a hearing before the undersigned on October 28, 2018, Plaintiff's counsel offered an entirely different theory as to why Regions' non-discriminatory justification for her termination should not be believed:

> **COUNSEL:** The issue in this case, just to condense it briefly – my client worked for Regions bank for over 31 years, Judge. They fired her because she allegedly didn't [open] this account [properly] for [a] new arrival from Cuba. That's what they claim.
>
> …
>
> And the critical thing, Judge, and the important thing [to] remember, their defense, their argument is she [opened the account] on this particular case, that's why [Defendant] fired her. And my client says well, *not only me, everybody did the same thing in other instances when a recent arrival from Cuba came. Nothing happened to them.*

[Oct. 28, 2018 Hearing Transcript, D.E. 32, pp. 24-25]. (emphasis added). Thus, Plaintiff not only failed to tailor her discovery requests in an effort to support her allegation that Pumar entered the fraudulent information, but it appears that she never even operated under the theory that Pumar was to blame until well after

---

a legitimate, non-discriminatory reason. *See* D.E. 110, p. 2. As stated in our Order on Motion for Sanctions on the issue, Plaintiff reads this request far too broadly, and we reject her claim that the footage should have been provided in response to same.

discovery had commenced. Based on the record before us, we cannot reconcile Plaintiff's arguments about the importance of the surveillance tapes with her failure to serve *any* discovery request directed at production of those tapes.

In sum, we find that the missing video footage is immaterial to Plaintiff's underlying claim that Regions discriminated against her on the basis of age. Because she cannot show that the missing tapes are important, she cannot demonstrate prejudice. Accordingly, sanctions under Rule 37(e)(1) are improper.

### B. *Plaintiff Fails to Establish Defendant Acted with Intent*

Next, we will look to Rule 37(e)(2), which allows for harsher spoliation sanctions when a Court determines a party acted "with the intent to deprive another party of the information's use in the litigation." The Advisory Committee notes make clear that the overall duty to preserve "does not call for perfection," and explain that a Court should "exercise caution…in using the measures specified in [Rule 37](e)(2)." Fed. R. Civ. P. 37(e), advisory committee's notes (2015).

We are unable to make a finding of such intent here because we are not convinced that Defendant's duty to preserve under Rule 37 extended to surveillance footage for the entire day. Rule 37(e) requires that the ESI at issue "should have been preserved" in the conduct of the litigation. But like the defendant in *ML Healthcare Services*, preservation of additional video evidence beyond that which showed Romero's interaction with the customer in question is superfluous to her underlying claims. *See ML Healthcare Servs.*, 881 F.3d at 1308 ("[F]ailure to preserve such speculative evidence does not raise the specter of bad faith in the way that a failure

to preserve evidence of a specific, crucial event in a case might."). Regions, confronted with Plaintiff's testimony that someone else opened the account she was fired for opening, provided approximately two hours' worth of footage – to include the relevant interaction with the customer who provided the unauthorized documents – which is more than sufficient to meet its obligations under Rule 37. *See id.*

At worst, it could be argued that Defendant acted with negligence when it failed to preserve surveillance footage for the entire day, and not the 9:00 A.M. – 10:45 A.M. time period. Bu there is nothing in the record to support Plaintiff's claim that Defendant acted with the *intent* to deprive her of the footage at issue, and the Rule specifically rejects cases that previously authorized sanctions based on a finding of negligence or gross negligence. Fed. R. Civ. P. 37(e), advisory committee notes (2015); *see also In re Delta/Airtran Baggage Fee Antitrust Litigation*, 770 F. Supp. 2d 1299, 1313 (N.D. Ga. 2011) (noting that "[i]n hindsight, Delta should not have waited" to take steps to preserve e-mails, "but without some evidence Delta's delay was intentional, its failure to act more quickly does not prove bad faith."); *Stovall v. Brykan Legends, LLC*, 2019 WL 480559, at *4 (D. Kan. Feb. 7, 2019) (" Although defendant's failure to take steps to preserve the ESI may be negligent, even grossly negligent, nothing in the record suggests defendant intentionally lost the video.").

Accordingly, we find that Plaintiff's Motion should be denied, as is her request for attorney's fees in having to bring the Motion.

### IV. CONCLUSION

For these reasons, Plaintiff's Motion is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of July, 2019.

>/s/ *Edwin G. Torres*
> EDWIN G. TORRES
> United States Magistrate Judge